UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA  \*   Case No. 05-60181-CR-LENARD
                          \*
v.                        \*
                          \*
GOMEZ ACCIME              \*
Defendant.                \*
                          \*\*\*\*\*\*

## MEMORANDUM IN AID OF SENTENCING

Gomez Accime, through undersigned counsel, respectfully requests that this Honorable Court impose a sentence that does not include incarceration for the reasons set out below.

Mr. Accime, a 52-year old, father of four children, is a first-time offender, who has been gainfully employed his entire life. He stands convicted after a jury trial of two counts of making a false statement on an application for an employment authorization, 18 U.S.C. § 1546(a) and two counts of mail fraud in connection therewith, in violation of 18 U.S.C. § 1341 (Counts 3,4,6 & 7). The jury acquitted him on the conspiracy count, 18 U.S.C. § 371, which alleged an overarching scheme to defraud in the filing of employment authorizations on behalf of others lasting from April 2003 to July 2005 (Count 1). It also acquitted him on another false statement count and related mail fraud count in connection with a separate employment authorization application (Count 2 &5).

First and foremost, were the Court to rely on the fraud guideline as calculated in the PSR it would in all respects reject the jury's verdict and proceed as if no trial had taken place and as if instead of having been acquitted of the conspiracy and other counts, in fact Mr. Accime had been convicted of the very conduct which the jury rejected. The Sixth Amendment right to a jury trial would indeed become a nullity in that case. This cannot be and Mr. Accime objects on Fifth Amendment and Sixth Amendment grounds, including due process, jury trial and grand jury



guarantees in the Constitution to being sentenced without regard to the jury verdict.

Morever, the PSR's calculation of loss in this case is incorrect as it is based on acquitted conduct alleged in the conspiracy count, unproved conduct and on a view of loss that ignores that the decision whether to grant or reject the employment permits was within the province of the federal agency and not a function of Mr. Accime's failure to file the forms and also otherwise results in an offense level that is incorrect and generally overrepresents the severity of the offense.

The correct sentencing range in this case is 8 to 14 months, based on application of § 2L2.1, the guideline for false immigration documents and results in a total offense level of 11 with no criminal history. The Presentence Report ("PSR") incorrectly calculated the guideline range under the fraud guideline at § 2B1.1 whereas the correct guideline for the offenses of conviction is § 2L2.1, the guideline for false immigration documents involving others. Although the PSR was correct in looking to § 2B1.1 as an initial step for the mail fraud counts, it then misapplies that guideline by failing to comply with the cross reference in §2B1.1(c)(3) that directs the court to apply the more specific guideline for immigration document offenses rather than the more broadly applicable guideline for white collar offenses.

The PSR also imposes an enhancement for role in the offense that is not appropriate under the facts in this case. Hence the guideline range set out in the PSR, 168 to 210 months based on a total offense level of 35 and Criminal History I results from an incorrect application of the guidelines. If relied on by the Court, it would result in an unreasonable sentence that is "greater than necessary" to comply with purposes of sentencing and that is therefore in violation of 18 U.S.C. § 3553.

Accordingly, Mr. Accime respectfully requests that the Court impose a sentence that does

2

not include imprisonment in light of the fact that Mr. Accime is a first time offender, who has four children who depend on his financial and emotional support, in light of his history of steady employment and charitable good works and the appropriately calculated guideline range. Such a sentence is reasonable and "sufficient, but not greater than necessary" to provide just punishment, afford adequate deterrence, protect the public and provide the defendant with needed rehabilitation as required by 18 U.S.C. § 3553(a) and 28 U.S.C. § 994(j).

## Sentencing after Booker

As the Court well knows, since the Supreme Court handed down United States v. Booker, 125 S.Ct. 738 (2005), the federal Sentencing Guidelines ceased to be mandatory, becoming only one of several factors to be considered under 18 U.S.C. § 3553(a). Although only advisory, the guideline range must nevertheless be correctly calculated when considered under § 3553(a). *See United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005).

> After *Booker*, sentencing requires two steps. First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines. *See United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir.2005). Second, the district court must consider several factors to determine a reasonable sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

*Id.* (setting out § 3553(a) factors). Post-*Booker*, sentences are subject to appellate review for reasonableness. Moreover, a guideline sentence is per se reasonable only if the district court has in

addition to calculating the guidelines also taken into account the other § 3553(a) factors. *Talley*.

I. **Mr. Accime's History and Characteristics, the Nature and Circumstances of the Offense, and the Kind Of Sentences Available Warrant At the Low End or Below the Guideline Range**

As set out in the PSR, Mr. Accime has been lawfully employed his entire life. PSR at ¶ 65-69. He is the father of four children, ages 18, 16, 11 and 9, who are being cared for by his extended family but whom he supports financially and emotionally. PSR at ¶ 51-52. He has never been previously charged nor convicted of any violations of law. PSR at ¶39. Even while employed at other jobs, he worked to help his community, first through an organization called Community Support of South Florida (CSOSF) founded in 1998 and which eventually led to his founding the Haitian-American Community Help Organization of South Florida (HACHO), in part funded with the proceeds from the sale of his home. PSR at ¶¶ 65 to 70. As a 52 year old man, the likelihood of recidivism is diminished. Indeed, the Sentencing Commission in a recent reports has explained that "recidivism rates decline relatively consistently as age increases." USSC, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES at 12. That Report also explained that the Commission failed to take a defendant's age into account in establishing the criminal history guidelines and that by not considering this factor the guidelines ignore an accurate predictor of future recidivism. *Id.* at 15-17.

In fact, the conduct for which he stands convicted is inconsistent with how Mr. Accime has led his life.

4

A.   **A Sentence At the Low End of the Guideline Range or Below It Satisfies the Statutory Requirements And Is Reasonable**

In determining the kind of sentence to impose pursuant to 18 U.S.C. § 3553(a)(3), a sentence below the guideline range is reasonable for multiple reasons. In this case, the substitution of a period of community confinement for incarceration to allow Mr. Accime to continue to work, support his children and pay whatever fines or restitution the Court may order is appropriate.

Nothing in the guidelines or the statute prevents the Court from fashioning such a sentence. Indeed, U.S.S.G. § 5B1.1 and 5C1.1, which limit the type of sentence to be imposed depending on the Zone is no longer mandatory. These provisions limiting the types of sentence rather than the length are also advisory after *Booker*. Under the totality of circumstances of this case, the Court should exercise its discretion to substitute probation with conditions of community confinement and home detention in place of incarceration of 8 months at the low end of the properly calculated guideline range.

Second, Congress itself views a sentence other than imprisonment appropriate in a case such as Mr. Accime's. Section 994(j) of Title 28, the statute that sets out the structure for guideline sentencing, provides:

> The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.

Mr. Accime's case fits squarely within that class of cases. He is a first-offender. His offense involved no violence and the offense is relatively not an "otherwise serious offense" in light of the

jury's verdict, which acquitted him of the conspiracy and some of the substantive counts and only convicted with respect to two separate instances of filing false application for employment permits and the corresponding mail fraud counts. The amount of loss related to those counts is less than $1000, if any. Moreover, given the nearly $25,000 that it costs society to incarcerate a person for one year, it makes more sense to fashion a sentence that places him on probation with a combination of conditions that provide for community confinement and home detention and allows Mr. Accime to continue to support his children at a much lower financial cost to society.

## II. THE GUIDELINES CALCULATION IN THE PSR IS INCORRECT

### A. The Fraud Guideline is Not the Correct Guideline for the Offense

Mr. Accime stands convicted of two counts of mail fraud in violation of 18 U.S.C. § 1341 and two counts of presenting false application for employment authorization permits in violation of 18 U.S.C. § 1546(a). He was also acquitted of the conspiracy count and one count each of § 1341 and § 1546(a).[1] In calculating the guideline for the mail fraud counts, the guideline manual at Appendix A directs the use of U.S.S.G. § 2B1.1, which is the general guideline for white collar offenses. However that guideline includes at § 2B1.1(c)(3) a cross-reference ( "an instruction to

---

[1] Mr. Accime stands convicted after a jury trial of :

Count 3 – mail fraud, 18 U.S.C. § 1341;
Count 4 – mail fraud, 18 U.S.C. § 1341;
Count 6 – presenting false application for employment authorization, 18 U.S.C. § 1546(a); and
Count 7 – presenting false application for employment authorization, 18 U.S.C. § 1546(a).

The jury acquitted him of three counts:

Count 1 – conspiracy to commit mail fraud, 18 U.S.C. § 371;
Count 2 – mail fraud, 18 U.S.C. § 1341; and
Count 5 – presenting a false application for employment authorization, 18 U.S.C. § 1546(a).

6

apply another offense guideline") that applies under the circumstances of this case. U.S.S.G. § 1B1.5(a).[2] Because the PSR calculated the guidelines under § 2B1.1 but failed to apply the cross reference in § 2B1.1(c)(3), which requires application of § 2L2.1 (the guideline for false statements in connection with immigration documents), the guideline calculation in the PSR is incorrect.

In a case such as this that involves false statements prosecuted under the broadly applicable mail fraud statute, the cross reference directs the court to apply the guideline that specifically "covers the conduct set forth in the count of conviction," which in this case would be § 2L2.1. *See U.S. v. Brisson*, --- F.3d ----, 2006 WL 1506721 (7th Cir. Jun 2, 2006) (applying tax guideline rather than fraud guideline in a case involving false claims for tax refunds to comply with cross-reference in §2B1.1(c)(3)); *accord United States v. Barnes*, 324 F.3d 135, 139-40 (3rd Cir.2003); *United States v. Araghaye*, 234 F.3d 1101, 1105-06 (9th Cir.2000). Because of this mistake, the guideline calculation set out in the PSR is incorrect.

### B. Section 2B1.3(c) Requires Application of the Guideline for False Statement Pertaining to Immigration Documents of Others

Section 2B1.1(c)(3) provides:

> If (A) neither subdivision (1) nor (2) of this subsection applies; (B) the defendant was convicted under a statute proscribing false, fictitious, or fraudulent statements or representations generally (e.g., 18 U.S.C. § 1001, § 1341, § 1342, or § 1343); and (C) the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two (Offense Conduct), apply that other guideline.

The three prerequisites set out in § 2B1.1(3)(c)(A), (B) & (C) are met.

First, neither subdivision (1) nor (2) applies. Subdivision (1) applies to offenses involving

---

[2] A cross reference must be followed just as any other guideline provision as a first step in determining the sentence to be imposed pursuant to 18 U.S.C. § 3553. *See* § 1B1.1(b).

firearms or destructive devices; subdivision (2) applies to offenses involving arson. Neither is applicable in this case.

Second, Mr. Accime was convicted in Counts 3 and 4 of a mail fraud violation of 18 U.S.C. § 1341, one of the enumerated statutes in § 2B1.1(3)(c)(B).

Lastly, the "conduct set forth" in the mail fraud counts is specifically covered by U.S.S.G. § 2L2.1, the guideline for violations of making false statements in respect to immigration documents of others. *See* § 2B1.1(3)(c)(C).   Counts 3 & 4 refer explicitly and by reference to language in the other counts to the mailing of an application for employment authorization on behalf of an alien to the United States Citizenship and Immigration Services ("CIS").

Indeed, § 2L2.1 is the guideline applicable to the § 1546(a) violations, the two substantive counts that correspond to the mail fraud counts on which Mr. Accime was also convicted. Moreover, this result is entirely consistent with the purpose of the cross-reference. *See* § 2B1.1, comment. (n. 15) ("Subsection (c)(3) provides a cross reference to another guideline in Chapter Two (Offense Conduct) in cases in which the defendant is convicted of a general fraud statute, and the count of conviction establishes an offense involving fraudulent conduct that is more aptly covered by another guideline."). It is also consistent with the explanation provided by the Commission when it adopted the cross reference as part of §2B1.1, which was a wholesale reorganization of the guideline for white collar offenses that resulted from "a study of economic crime issues over a number of years." Amendment 617, "Reason for Amendment" at ¶ 1, App. C:

> The amendment includes a new cross reference (subsection (c)(3)) that is more generally applicable and intended to apply whenever a broadly applicable fraud statute is used to reach conduct that is addressed more specifically in another Chapter Two guideline. Prior to this amendment, the fraud guideline contained an application note

8

> that instructed the user to move to another, more appropriate Chapter Two guideline, under specified circumstances. Although this note was not a cross reference, but rather a reminder of the principles enunciated in § 1B1.2, it operated like a cross reference in the sense that it required use of a different guideline.

*Id.*, at ¶ 19.

### B. In the Alternative, the Loss Calculation under § 2B1.1(b)(1) Is Not Correct

Were the Court to reject application of the cross reference in § 2B1.1(c)(3), and apply the fraud guideline as indicated in the PSR, Mr. Accime objects to the imposition of the loss enhancement calculated therein both as a matter of law and on the basis of the facts in this case. The base offense level under § 2B1.1 is 6. Because the loss attributable to the offenses of conviction is less than $1,000 (at most $450 per employment permit), no other enhancements apply. To adopt the PSR's calculation of loss requires the Court to proceed as if this case had not gone to trial and as if the jury had not reached a verdict, which rejected the allegations in the conspiracy count and two other counts.

The PSR's use of the loss amount pertaining to the very conduct alleged in the conspiracy count on which the jury acquitted Mr. Accime is not wrong. The 18-level increases is based on a loss of more than $2,500,000 but less $7,000,000, which is based on the number of employment permits that the government claimed were involved in the conspiracy. PSR at ¶¶ 4-17 &28.

To enhance the offense level based on acquitted conduct involving the number of allegedly fraudulent documents involved in the conspiracy would directly implicate Mr. Accime's 6th Amendment right to a trial by jury and contradict the jury's findings. *See United States v. Pimental*, 367 F.Supp.2d 143 (D. Mass. 2005) ("To tout the importance of the jury in deciding facts, even

9

traditional sentencing facts, and then to ignore the fruits of its efforts makes no sense – as a matter of law or logic."); *see also United States v. Coleman*, 370 F. Supp.2d 661 (S.D. Ohio 2005) (court must use the beyond a reasonable doubt standard when considering acquitted conduct because to do otherwise disrespects and ignores the jury's verdict); *United States v. Carvajal*, 2005 WL 476125 (S.D.N.Y. 2005) (declining "to accept the government's argument that, notwithstanding the jury's verdict that Carvajal was not guilty of actually distributing crack, I should nevertheless consider that the acts necessary for completing the substantive crime were proved by a preponderance of the evidence. *Cf. United States v. Watts*, 519 U.S. 148 (1997)."). *See also Ring v. Arizona*, 536 U.S. 584, 610 (2002) (Scalia, J. concurring) ("the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives--whether the statute calls them elements of the offense, sentencing factors, or Mary Jane--must be found by the jury beyond a reasonable doubt.")

Even assuming that the Court may disregard the jury verdict and consider additional loss amounts as relevant conduct pursuant to U.S.S.G. § 1B1.3, the only loss as to which the government has provided even the minimal proof required by § 6A1.3(a) of the guidelines – "information [that] has sufficient indicia of reliability to support its probable accuracy" – under a preponderance standard is a total of $3,600 related to 8 persons. PSR at ¶ 22. However, § 2B1.1(b)(1) provides no increase in the offense level for any loss under $5,000.

In any event, the fact that a number of the employment permits were granted albeit a small percentage of the number allegedly filed reflects the fact that the decision whether to grant or reject the permit requests was not Mr. Accime's. Hence the alleged loss was not a function of any fraudulent misrepresentations that Mr. Accime may have made. Rather the loss was the result of

10

decisions made by a federal agency. Under the guideline, such a loss does not amount to pecuniary harm that resulted from the offense. *See* U.S.S.G. § 2B1.1 (comment. n. 3).

### C. The Correct Guideline Calculation Pursuant to U.S.S.G. § 2L2.1 and Other Guideline Provisions Results in a Range of 8 to 14 Months

Applying the cross reference in § 2B1.1(c)(3), requires the Court to calculate the guideline under U.S.S.G. § 2L2.1. The base offense level under § 2L2.1(a) is 11. The guideline, § 2L2.1(b)(2) provides an enhancement based on the number of documents involved in the offense (+3 levels for 6-24 documents; +6 levels for 25-99 documents; or +9 levels for 100 or more documents). In light of the jury's acquittal of Mr. Accime on the conspiracy count, however, no enhancement should be applied bases on the number of documents involved in the offense.[3]

#### 1. Role Enhancement – U.S.S.G. § 3B1.1(a)

The PSR imposes a 4-level enhancement on the basis of Mr. Accime's role in the offense. Again, because of the acquittal on the overarching conspiracy, the Court should not impose this enhancement as none is applicable based on the counts of conviction and the conduct alleged therein. Moreover, as the introductory commentary to this enhancement states, this enhancement may not

---

[3] To enhance the offense level based on the number of allegedly fraudulent documents involved in the conspiracy would directly implicate Mr. Accime's 6th Amendment right to a trial by jury and contradict the jury's findings. *See United States v. Pimental*, 367 F.Supp.2d 143 (D. Mass. 2005) ("To tout the importance of the jury in deciding facts, even traditional sentencing facts, and then to ignore the fruits of its efforts makes no sense – as a matter of law or logic."); *see also United States v. Coleman*, 370 F. Supp.2d 661 (S.D. Ohio 2005) (court must use the beyond a reasonable doubt standard when considering acquitted conduct because to do otherwise disrespects and ignores the jury's verdict); *United States v. Carvajal*, 2005 WL 476125 (S.D.N.Y. 2005) (declining "to accept the government's argument that, notwithstanding the jury's verdict that Carvajal was not guilty of actually distributing crack, I should nevertheless consider that the acts necessary for completing the substantive crime were proved by a preponderance of the evidence. *Cf. United States v. Watts*, 519 U.S. 148 (1997).")

11

apply even where there are multiple culpable participants where equally culpable defendants are involved. *See also United States v. Katora*, 981 F.2d 1398 (3d Cir. 1992). Moreover, in order to impose a 4-level enhancement, the defendant must have been an organizer or leader of five other criminally responsible participants and it is not sufficient that there be other employees if they also were not criminally responsible. *See United States v. Maloof*, 205 F.3d 819, 830 (5th Cir. 2000) (remanding where although 3 other employees were somehow involved in fraud scheme, it was error to find they "were participants without first determining that each of them was criminally responsible for commission of an offense"). Hence, even if the Court were to determine that Mr. Accime should receive an enhancement for his role in the offense, it should not impose a full 4-level enhancement absent a finding that there were five or more criminally responsible participants. In such a case, an enhancement of only 2 levels under § 3B1.1(c) would be called for.

  **2.**  **Obstruction of Justice – U.S.S.G. § 3C1.1**

The PSR identifies obstruction of justice as a possible enhancement but leaves to the Court the decision of whether it should apply. The jury's acquittal of Mr. Accime of the conspiracy count and two other counts, however, vindicates Mr. Accime. On that basis alone, the Court should not impose this enhancement as it would be contrary to the jury finding and violative of Mr. Accime's constitutional right to a trial by jury. At a minimum, it would impose an unconstitutional burden on the exercise of his constitutional trial rights. Application of this enhancement, particularly under the facts of this case and after a partial acquittal, violates Mr. Accime's rights under the due process clause and the 5th and 6th Amendments to be free from punishment except upon an indictment, and a conviction beyond a reasonable doubt by a jury that he in fact committed perjury or otherwise obstructed justice. *See Blakely v. Washington*, 542 U.S. 296, 308 (2004). (Scalia, J., concurrence)

("Another example of conversion from separate crime to sentence enhancement that Justice O'Connor evidently does not consider going "too far" is the obstruction-of-justice enhancement, see *post,* at 2546. Why perjury during trial should be grounds for a judicial sentence enhancement on the underlying offense, rather than an entirely separate offense to be found by a jury beyond a reasonable doubt (as it has been for centuries, see 4 W. Blackstone, Commentaries on the Laws of England 136-138 (1769)), is unclear."). Accordingly, Mr. Accime objects to an obstruction of justice enhancement both as a matter of law and under the facts in this case.

Nevertheless, were the Court inclined to impose a § 3C1.1 enhancement on this basis, it is required first to "review the evidence and make independent findings necessary to establish a willful impediment or obstruction of justices, or an attempt to do the same" and it should "address each element of the alleged perjury in a separate and clear finding." *United States v. Dunnigan,* 113 S.Ct. 1111, 1117 (1993). In this Circuit, to enhance based on a finding of perjury, a district court, under *Dunnigan,* must find four elements: (1) testimony under oath, (2) that is false, (3) that is material, (4) and that is given with the willful intent of falsehood and not resulting from mistake, confusion, or faulty memory. *United States v. Singh,* 291 F.3d 756, 763 (11th Cir.2002). The facts in this case would not support such findings and the Court should therefore not impose any enhancement for obstruction of justice.

### 3.     Acceptance of Responsibility – U.S.S.G. § 3E1.1

On the day he was first arrested at his initial interview, Mr. Accime disclosed the details of his involvement to the case agents. Although the government did not agree with Mr. Accime's version of events, the jury's verdict vindicates much, if not all, of Mr. Accime's version. Indeed, the jury's acquittal on Count 1, rejects the government's view of the overarching scheme and eliminates

any reason for denying a reduction on the basis of Mr. Accime's decision to exercise his constitutional right to a trial by jury.

Although the PSR does not recommend a reduction for acceptance, the Court should reduce the offense level by 2-levels pursuant to § 3E1.1(a) and application note 1 and 2.

### 4. Total Offense Level and Sentencing Range

All four counts of conviction group pursuant to § 3D1.2(d). Hence the total offense level should be as follows:

| | |
|---|---|
| Offense Level, § 2L2.1(a): | 11 |
| Role in the Offense, § 3B1.1(c): | 2 |
| Acceptance of Responsibility: | -2 |
| Total Offense Level: | 11 |

As Mr. Accime has no prior criminal history, his sentencing range is 8 to 14 months.

### C. Downward Departures

If the Court were to find that the cross-reference in § 2B1.1(c)(3) does not apply and further that the loss amount is as calculated in the PSR, it should depart down to account for the fact that the aggregation of small amounts adding up to the $2.5 or $3 million loss (see PSR at ¶ 17) overrepresents the severity of the offense and Mr. Accime's culpability. *See United States v. Lara*, 47 F.3d 60 (2d Cir. 1995) (downward departure appropriate where drug quantity was determined by aggregating small street-level sales over a long period as such a person was less culpable and presented a lesser threat to society than someone who trafficked in larger single transaction quantities); U.S.S.G. § 2B1.1 (comment. n. 19(C)) (downward departure may be warranted where offense level overstates the seriousness of the offense). As the Second Circuit acknowledged in *Lara*, in the context of drug trafficking a single-transaction large amount, whether of drugs or loss

14

reflects a more serious offense and offender so that when the same amount of loss results from the aggregation of small amounts as in this case a departure may be warranted.

In particular, in light of the acquittal by the jury of the conspiracy charge, this Court should depart down from the loss amount to a sentence more in line with the jury verdict and the guideline range resulting from the immigration document guideline even if it were to apply the fraud guideline. *See, e.g., United States v. Lombard*, 72 F.3d 170 (1st Cir. 1995) (remanding for consideration of departure where guideline range was based on acquitted conduct).

## Conclusion

For all these reasons, Mr. Accime respectfully requests that the Court impose a sentence of probation with a combination of home confinement or community confinement and supervision to allow Mr. Accime to continue to work and support his family and make whatever restitution the Court should Order.

Such a sentence would satisfy the statutory requirement that a sentence other than imprisonment is appropriate for first time, non-violent offenders who commit crimes that are not otherwise serious. *See* 28 U.S.C. § 994(j) and is "sufficient, but not greater than necessary" to provide just punishment, afford adequate deterrence, protect the public and provide the defendant with needed rehabilitation as required by 18 U.S.C. § 3553(a).

In this case, a sentence of probation with community confinement or home detention amounts to just punishment in the best tradition of the federal courts and accounts for the unique failings of human beings that, in the words of Justice Kennedy in *Koon v United States*, "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

Respectfully submitted,

Carmen D. Hernandez, Esquire
717 D Street NW, Suite 310
Washington, D.C. 20004
Bar # MD03366
Tel: (202) 628-0090; Fax: (202) 628-2881
Admitted Pro Hac Vice

Sebastian Cotrone, Esquire
509 Southeast 9th Street
Ft. Lauderdale, FL 33316
FL Bar # 0054704
Tel: (954) 779-7773 Fax: (954)779-7758

Dated: June 22, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Sentencing Memorandum was faxed to AUSA Jennifer Keene and to USPO Kathryn A. Gomez this 20th day of June, 2006.

Sebastian Cotrone